## UNITED  STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NEW CONCEPTS FOR LIVING, INC.,
    a New Jersey non profit corporation,

and

STEVEN SETTEDUCATI,
    an individual residing in New Jersey

    Plaintiffs,

v.

COMMUNICATION WORKERS LOCAL 1040,
    An unincorporated business entity, doing business at:
    230 Parkway Avenue,
    Trenton, NJ 08618


and

WEISSMAN & MINTZ, LLC,
    a limited liability corporation, doing business at:
    One Executive Drive, Suite 200
    Somerset, New Jersey 08873


and

BRYAN BALDICANAS,
    An individual residing at:
    312 Depew Street, Dumont, NJ 07628

and

JOHN DOE 1 - 3

    Defendants

Case No:.

## COMPLAINT

PLANTIFF, NEW CONCEPTS FOR LIVING, INC., by and through its undersigned counsel, bring this action against the Communications Workers of America, Local 1040, a New Jersey trade union, ("CWA"), Weissman and Mintz, LLC, a New Jersey LLC ("Weissman"), Brian Baldicanas, an Individual ("Baldicanas") and John Doe(s) 1 -3 ("John Doe 1" *set seq.,* individuals unknown at this time) for violations of Federal and State law arising from Defendant's unlawful surveillance, interception, disclosure and/or use of oral, wire and electronic communication in violation of 18 U.S.C. §§2511, *et. Seq.* and NJ Code 2A:156A, *et. Seq.;* Defendants conducted this unlawful surveillance, interception and/or use of oral, wire and electronic communications of Plaintiff and its Chief Executive Officer, Steve Setteducati (Setteducati), and other unnamed parties, for the purpose of gaining an economic advantage therefrom, and in so doing Plaintiff was harmed in an amount in excess of the jurisdictional minimum.

In support thereof, Plaintiff alleges as follows:

## JURISDICTION AND VENUE

1.  This Court has subject matter jurisdiction over this matter pursuant to 28.U.S.C §1331 because this action arises out of, *inter alia,* Defendants' violation of 18 U.S.C. 2511, *et. seq.* This Court has Supplemental Jurisdiction over the New Jersey statutory and common law claims pursuant to 28. U.S.C. 1367.

2.  Venue in this District is proper under 28 U.S.C. 1391(b)(2) because, *inter alia,* a substantial part of the events giving rise to the Plaintiff's claims occurred in this District in that the unlawful surveillance, interception, and use of the oral, wire and

electronic communications occurred in this District, and the Plaintiff and Defendants are all resident in, and present at the time of the offense(s) in the District.

3. Plaintiff Steve Setteducati is a resident of Emerson, NJ, and all times materially relevant hereto was CEO of NCFL, and a resident of the District.

4. This Court has personal jurisdiction over Defendant Baldicanas because, *inter alia,* Baldicanas is a resident of New Jersey and was present in this District when he caused tortious injury and committed attendant crimes in this District;

5. This Court has personal jurisdiction over Defendant CWA because, *inter alia,* CWA, Local 1040 is located in New Jersey, employed and/or directed Baldicanas as an employee and/or agent at all times pertinent hereto, and directed, condoned, endorsed and/or profited from his action in their interest and on their behalf, was itself present in this District when they caused tortious injury and committed attendant crimes in this District;

6. This Court has personal jurisdiction over Defendant Weissman because, *inter alia,* Weissman is incorporated in New Jersey, received, possessed, disclosed, used and disseminated unlawfully obtained oral, wire or and/or electronic communication in New Jersey, and was itself present in this District when they caused tortious injury and committed attendant crimes in this District;

## PARTIES

7. Plaintiff NCFL is a non-profit providing services to developmentally disabled adults, funded by state and federal funds, and incorporated in New Jersey; its CEO,

3

Setteducati is a resident of New Jersey, and was present at all times pertinent hereto in the District;

8. Plaintiff Steve Setteducati is an individual residing in Emerson, NJ, and is a former Mayor of Emerson, a business and community leader in the area.

9. Defendant Baldicanas is, upon information and belief. a resident of New Jersey, and resides at 312 Depew Street, Dumont, NJ 07628

10. Defendant Weissman is, upon information and belied, a limited liability corporation, with its principal place of business at One Executive Drive, Suite 200, Somerset, NJ 08873.

11. Defendant CWA is, upon information and belief, an unincorporated local union, with its principal place of business at 2230 Parkway Avenue, Trenton, NJ 08618.

## FACTUAL BACKGROUND

12. Plaintiff NCFL operates 13 residential "Group Homes" and a "day program" for developmentally disabled adults in northern New Jersey, programs which are funded by state and federal funds as well as private funds and donations.

13. NCFL at all times pertinent hereto did employ approximately 100 full time, part time and "per diem" or contingent workers providing direct care, supervising the care, and providing clinical, administrative, managerial and professional support of such operations;

14. Steve Setteducati at all times pertinent hereto was CEO of NCFL.

15. One of Plaintiff's "Group" or "Residential" Homes, River Vale, is located in River Vale, New Jersey ("River Vale Group Home"); it employed approximately 5 direct care staff ("DSP") and one "house manager" who supervised the DSPs in

their care for the full time, developmentally disabled "residents" of the home, of which there were four at all or most times.

16. The manager of the River Vale home, at all times pertinent hereto, was Levander Williams ("Williams"), who reported to Steve Setteducati, the CEO of NCFL, and who supervised DSPs at the home, including Defendant Baldicanas. Williams had a private office, adjacent to the Group Home's dining room and kitchen area (See attachment 1), which office was for the conduct of the official business of NCFL.

17. The direct care staff, numbering approximately 85 full and part time staff, were represented by Defendant CWA at all times pertinent hereto, and Defendant Baldicanas was the "steward" or "resource" person for the River Vale Group Home, a member of the union's bargaining committee and an employee of the Defendant CWA as reported on Schedule 12 of the union's federal LM2 report, attached hereto.

18. In October 2016, several employees of NCFL, members of the CWA bargaining unit, were circulating a "decertification" petition to remove the union as their exclusive bargaining agent (a petition ultimately signed by a majority of employees) a legal procedure which would deprive the union of tens of thousands of dollars of dues paid by the employees each year.

19. National Labor Relations Board ("NLRB") procedure provides that if 30% of the employees in a bargaining unit sign such a petition, the NLRB will conduct an election to determine whether employees wish to retain, or remove, the union as their exclusive bargaining agent, a decision which could cost the union the dues that it had been collecting.

20. The CWA and NCFL had last negotiated an extension of their collective bargaining agreement ("CBA") in 2011, which expired in 2014, and there were no legal impediments in October 2016 to the employees filing the decertification petition.

21. The expired CBA provided that all employees in the bargaining unit must pay union dues or fees to the union as a condition of employment, and the union collected approximately $100,000 in dues and fees for every 3 year CBA it negotiated.

22. Under NLRB procedure, a decertification petition generally cannot be filed if a CBA is in place. A CBA can prevent a decertification petition for up to 3 years.

23. An unfair labor practice charge ("ULP") filed by the union, however, can block the NLRB from conducting a decertification election ("a blocking charge").

24. On or about October 18, 2016 there were two employees scheduled to work the evening shift, Defendant Baldicanas, and Saeed Martin. There were four residents in the home at the time.

25. Upon information and belief, Defendant CWA was managed at all times pertinent hereto by Carolyn Wade, its elected President, and full time executive. Donna Ingram was CWA's principal representative at NCFL, responsible for managing or conducting the union's affairs and managing the relationship with the staff on behalf of her employer, the CWA.

26. Upon information and belief, Defendant CWA was represented at all times pertinent hereto by Defendant Weissman, and more particularly by Weissman attorney Annemarie Pinarski.

27. On or about October 18, 2016, Williams, the Manager of the River Vale Group Home called his CEO, Setteducati, on his cell phone from his private office to discuss employee relations matters, and asked Setteducati to come to River Vale after work that evening to speak to Baldicanas; Williams used the speakerphone feature of his office phone to conduct the call;

28. Defendant Baldicanas, upon information and belief, acting on behalf of the CWA surreptitiously intercepted and recorded that call, without knowledge or permission of either Williams or Setteducati, purportedly by use of his cell phone as a digital or electronic recording device ("Recording 1").

29. Defendant Baldicanas disclosed, transferred, and/or conveyed to Defendant CWA, Defendant Weissman and Defendant John Doe(s), as yet undisclosed, the contents of the intercepted wire, oral or electronic communications.

30. Defendant CWA and Defendant Weissman were in possession and control of Recording 1, and caused it to be disclosed, transferred, conveyed or provided to one another, and to others, as yet unknown, including Defendant John Doe(s) until finally it was acquired by the undersigned counsel pursuant to a subpoena duces tecum.

31. Defendant John Doe(s) were at material times pertinent hereto in possession of Recording 1, and intentionally caused it to be disclosed, transferred, conveyed or provided to one another, and to others.

32. Mr. Setteducati was unaware of the recording, or that Defendant Baldicanas had secreted himself within earshot of the conversation between himself and Mr. Williams, his manager, and Setteducati relied on the confidential nature of the

employment relationship with his manager when he conversed with him, unaware that he was on speakerphone.

33. Defendant Baldicanas, upon information and belief, encouraged Williams to arrange for Setteducati to come to River Vale that evening under false and misleading pretenses, *to wit,* that Baldicanas was unhappy with the CWA and would like to "get the facts" from Mr. Setteducati concerning the decertification petition.

34. In fact, upon information and belief, Defendant Baldicanas and Defendant CWA coordinated a visit by Setteducati to the River Vale Group Home later in the day on or about October 18, 2016 in an effort to try and trap Setteducati into inadvertent statements that might be used by Defendant CWA to file a "blocking charge", or ULP, to stop employees from pursuing the decertification of the union, and to further CWA's commercial interests by preserving its income stream for the next several years.

35. Upon information and belief, Setteducati was induced by Baldicanas to come to the River Vale Group Home, and did participate in a conversation, principally with Saeed Martin, but again recorded surreptitiously by Baldicanas, where Setteducati attempted to answer questions posed by Martin, but actually instigated by Baldicanas. Those answers, though materially accurate, became the basis of the "blocking charge" sought by the union to derail the employees' decertification of the union, as they were recorded by Baldicanas ("Recording 2').

36. Upon information and belief, Defendant CWA procured, through its agent Baldicanas, the surreptitiously intercepted oral and telephonic communications of Setteducati, and later Martin, in Recordings 1 and 2.

37. Upon information and belief, Defendants Weissman and CWA came into possession of Recording 1 and Recording 2 sometime prior to March 2017, and subsequently produced to Plaintiff a transcription of Recording 2 that was made (dated) in March 2017, and the audio of Recording 1.

38. Defendants Weissman and CWA attempted to use Recording 2 in a hearing before the NLRB in September of 2018, and upon information and belief disclosed to others, including but not limited to Joanna Ross (f/k/a Pagones), Nancy Slahetka and John Doe(s) the contents both Recordings 1 and 2 by providing them with digital or physical copies of the recordings.

39. Upon information and belief, in making both Recordings 1 and 2, and inducing Setteducati to come to the River Vale Group Home, Defendant Baldicanas was acting at all times with the knowledge of, and at the direction of, and as an agent of Defendant CWA.

40. Upon information and belief, the pretext of the inducing Setteducati to come to River Vale was materially false, and known to be materially false by both Baldicanas and Defendant CWA.

41. NCFL has incurred costs in excess of $200,000 and reputational damages as a result of the tortious and criminal acts of the Defendants, or each of them;

42. Setteducati, a respected member of the community, community leader and former Mayor, has incurred costs and reputational damages as a result of the tortious and criminal acts of the Defendants, or each of them;

## COUNT 1

### Violation of Federal Wire Intercept Statute 18 U.C.C. §2511

43. Plaintiff NCFL repeats and re-alleges each of the above allegations in ¶¶ 1-42 as though set forth fully herein.

44. Plaintiff NCFL by and through its CEO, Steve Setteducati was conducting its business, in interstate commerce, by use of the telephone on or about October 18, 2016 when its manager, Williams, did telephone Setteducati to discuss certain employee relations and labor relations matters.

45. During that call, Defendant Baldicanas surreptitiously, and without the knowledge or permission of either Williams or Setteducati, intercepted and recorded their private business conversation for the purpose of intercepting and procuring a voice recording of a wire, electronic or oral communications;

46. Baldicanas at no time identified himself to Plaintiff as being a party to the call, and failed to disclose his presence to him;

47. Setteducati has attested (see attached Affidavit) that at the time of the call he had a subjective expectation that the call was between him and his manager only, and that he had a reasonable expectation that it was not being intercepted and further, that he had not given permission to record;

48. Baldicanas was acting as agent for CWA in surreptitiously intercepting the communications described above;

49. Baldicanas purposely disclosed to other parties, including Defendants CWA and Weissman, as well as Pagones-Ross and Slahetka, and John Doe(s) the contents of the unlawful intercept of wire, electronic or oral communications;

50. Defendant CWA purposely disclosed to other parties, including Defendants Weissman, as well as Pagones-Ross and Slahetka, the contents of the unlawful intercept of wire, electronic or oral communications, knowing or having reason to know it had been obtained unlawfully;

51. Defendant Weissman purposely disclosed to other parties, including Pagones-Ross and Slahetka, and John Doe(s) the contents of the unlawful intercept of wire, electronic or oral communications, knowing or having reason to know it had been obtained unlawfully;

52. Defendant John Doe(s) were at material times pertinent hereto in possession of Recording 1, and intentionally caused it to be disclosed, transferred, conveyed or provided to one another, and to others.

53. Defendants' tortious and unlawful acts were in furtherance of a successful scheme to stop the employees' decertification petition;

54. Plaintiff NCFL suffered reputational damage, and costs in excess of $200,000 as a direct and proximate result of the unlawful acts of Defendant(s).

55. Setteducati, a respected member of the community, community leader and former Mayor, has incurred costs and reputational damages as a result of the tortious and criminal acts of the Defendants, or each of them;

## COUNT 2

### Violation of New Jersey Wire Intercept Statute: NJ Code 2A:156A

56. Plaintiff NCFL repeats and re-alleges each of the allegations in ¶¶1-42 as though set forth fully herein.

57. Plaintiff NCFL by and through its CEO, Steve Setteducati was conducting its business, in interstate commerce, by use of the telephone on or about October 18, 2016 when its manager, Williams, did telephone Setteducati to discuss certain employee relations and labor relations matters.

58. During that call, Defendant Baldicanas surreptitiously, and without the knowledge or permission of either Williams or Setteducati, intercepted and recorded their private business conversation for the purpose of intercepting and procuring a voice recording of a wire, electronic or oral communications;

59. Baldicanas at no time identified himself to Plaintiff as being a party to the call, and failed to disclose his presence to him;

60. Setteducati has attested (see attached Affidavit) that at the time of the call he had a subjective expectation that the call was between him and his manager only, and that he had a reasonable expectation that it was not being intercepted and further, that he had not given permission to record;

61. Baldicanas was acting as agent for CWA in surreptitiously intercepting the communications described above;

62. Baldicanas purposely disclosed to other parties, including Defendants CWA and Weissman, as well as Pagones-Ross and Slahetka, the contents of the unlawful intercept of wire, electronic or oral communications;

63. Defendant CWA purposely disclosed to other parties, including Defendants Weissman, as well as Pagones-Ross and Slahetka, and John Doe(s) the contents of

the unlawful intercept of wire, electronic or oral communications, knowing or having reason to know it had been obtained unlawfully;

64. Defendant Weissman purposely disclosed to other parties, including Pagones-Ross and Slahetka, and John Doe(s) the contents of the unlawful intercept of wire, electronic or oral communications, knowing or having reason to know it had been obtained unlawfully;

65. Defendant John Doe(s) were at material times pertinent hereto in possession of Recording 1, and intentionally caused it to be disclosed, transferred, conveyed or provided to one another, and to others.

66. Defendants' tortious and unlawful acts were in furtherance of a successful scheme to stop the employees' decertification petition;

67. Plaintiff NCFL suffered reputational damage, and costs in excess of $200,000 as a direct and proximate result of the unlawful acts of Defendant(s).

68. Setteducati, a respected member of the community, community leader and former Mayor, has incurred costs and reputational damages as a result of the tortious and criminal acts of the Defendants, or each of them;

## COUNT 3

### Violation of Federal Wire Intercept Statute 18 U.C.C. §2511

69. Plaintiff Setteducati repeats and re-alleges each of the allegations in ¶¶1-42 as though set forth fully herein.

70. Plaintiff Setteducati was conducting its business, in interstate commerce, by use of the telephone on or about October 18, 2016 when a NCFL manager Levander

Williams did telephone Setteducati to discuss certain employee relations and labor relations matters.

71. During that call, Defendant Baldicanas surreptitiously, and without the knowledge or permission of either Williams or Setteducati, intercepted and recorded their private business conversation for the purpose of intercepting and procuring a voice recording of a wire, electronic or oral communications;

72. Baldicanas at no time identified himself to Plaintiff as being a party to the call, and failed to disclose his presence to him;

73. Setteducati has attested (see attached Affidavit) that at the time of the call he had a subjective expectation that the call was between him and his manager only, and that he had a reasonable expectation that it was not being intercepted and further, that he had not given permission to record;

74. Baldicanas was acting as agent for CWA in surreptitiously intercepting the communications described above;

75. Baldicanas purposely disclosed to other parties, including Defendants CWA and Weissman, as well as Pagones-Ross and Slahetka, the contents of the unlawful intercept of wire, electronic or oral communications;

76. Defendant CWA purposely disclosed to other parties, including Defendants Weissman, as well as Pagones-Ross and Slahetka, and John Doe(s) the contents of the unlawful intercept of wire, electronic or oral communications, knowing or having reason to know it had been obtained unlawfully;

77. Defendant Weissman purposely disclosed to other parties, including Pagones-Ross and Slahetka, and John Doe(s) the contents of the unlawful intercept of wire,

14

electronic or oral communications, knowing or having reason to know it had been obtained unlawfully;

78. Defendant John Doe(s) were at material times pertinent hereto in possession of Recording 1, and intentionally caused it to be disclosed, transferred, conveyed or provided to one another, and to others.

79. Defendants' tortious and unlawful acts were in furtherance of a successful scheme to stop the employees' decertification petition;

80. Plaintiff suffered reputational damage, and costs in excess of the jurisdictional minimum as a direct and proximate result of the unlawful acts of Defendant(s).

81. Setteducati, a respected member of the community, community leader and former Mayor, has incurred costs and reputational damages as a result of the tortious and criminal acts of the Defendants, or each of them;

## COUNT 4

**Violation of New Jersey Wire Intercept Statute: NJ Code 2A:156A**

82. Plaintiff Setteducati repeats and re-alleges each of the allegations in ¶¶1-42 as though set forth fully herein.

83. Plaintiff Setteducati was conducting business, in interstate commerce, by use of the telephone on or about October 18, 2016 when NCFL manager, Levander Williams, did telephone Setteducati to discuss certain employee relations and labor relations matters.

84. During that call, Defendant Baldicanas surreptitiously, and without the knowledge or permission of either Williams or Setteducati, intercepted and recorded their

private business conversation for the purpose of intercepting and procuring a

voice recording of a wire, electronic or oral communications;

85. Baldicanas at no time identified himself to Plaintiff as being a party to the call,

and failed to disclose his presence to him;

86. Setteducati has attested (see attached Affidavit) that at the time of the call he had

a subjective expectation that the call was between him and his manager only, and

that he had a reasonable expectation that it was not being intercepted, and further,

that he had not given permission to record;

87. Baldicanas was acting as agent for CWA in surreptitiously intercepting the

communications described above;

88. Baldicanas purposely disclosed to other parties, including Defendants CWA and

Weissman, as well as Pagones-Ross and Slahetka, the contents of the unlawful

intercept of wire, electronic or oral communications;

89. Defendant CWA purposely disclosed to other parties, including Defendants

Weissman, as well as Pagones-Ross and Slahetka, and John Doe(s) the contents of

the unlawful intercept of wire, electronic or oral communications, knowing or

having reason to know it had been obtained unlawfully;

90. Defendant Weissman purposely disclosed to other parties, including Pagones-

Ross and Slahetka, and John Doe(s) the contents of the unlawful intercept of wire,

electronic or oral communications, knowing or having reason to know it had been

obtained unlawfully;

91. Defendant John Doe(s) were at material times pertinent hereto in possession of Recording 1, and intentionally caused it to be disclosed, transferred, conveyed or provided to one another, and to others.

92. Defendants' tortious and unlawful acts were in furtherance of a successful scheme to stop the employees' decertification petition;

93. Plaintiff suffered reputational damage, and costs in excess of the jurisdictional minimum as a direct and proximate result of the unlawful acts of Defendant(s).

94. Setteducati, a respected member of the community, community leader and former Mayor, has incurred costs and reputational damages as a result of the tortious and criminal acts of the Defendants, or each of them;

## COUNT 5

### Common Law Fraud – Baldicanas

95. Upon information and belief, Baldicanas induced Setteducati to come to River Vale under false pretenses, knowing the reasons given to Setteducati as stated above were materially false;

96. Baldicanas, was aware of the falsity of the claims that he was open minded about the union and just wanted to "get the facts."

97. Upon information and belief, Baldicanas was in fact working with Defendant CWA at all times pertinent hereto to effectuate this fraud.

98. Baldicanas intended that Setteducati rely on his misrepresentations.

99. Setteducati was aware that many employees who had been members of CWA for years were unhappy and signing a decertification petition to remove the union (See affidavit), and Setteducati did reasonably rely on the materially false

representations of Baldicanas himself that he was unhappy with the union and had

a few questions and just wanted to "get the facts," and in reliance thereon

Setteducati went to River Vale after work on or about October 18, 2016.

100.     Setteducati relied to his detriment on the false protestations of Baldicanas;

101.     Both Baldicanas and CWA were aware, or should have been aware, at all

times pertinent hereto that the River Vale Group Home was home to residential

clients who are protected under HIPAA.

102.     Baldicanas' wire interception of the conversations in both Recording 1 and

2 were perpetrated in a facility regulated under HIPAA, made without obtaining

"informed consent" of the residents and/or their guardians, and made without the

knowledge or acquiescence of NCFL nor under a lawful business services

agreement, and as such the act of interception and recording were in furtherance

of a scheme to violate patient protections provided under HIPAA.

103.     Both NCFL and Setteducati suffered damage as a proximate and

foreseeable result of the tortious and unlawful actions of Baldicanas as set forth in

¶¶1-42.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs NCFL and Setteducati pray for the following relief:

104.     That Judgment be awarded in their favor awarding Plaintiff NCFL

statutory, actual/compensatory, proximate, and punitive damages based on

Defendants' violations of 18 U.S.C. §§2511, *et. Seq.* and NJ Code 2A:156A, *et.*

*Seq.* and common law fraud as set forth above;

105.    That Judgment be awarded in their favor awarding Plaintiff Setteducati

statutory, actual/compensatory, proximate, and punitive damages based on

Defendants' violations of 18 U.S.C. §§2511, *et. Seq.* and NJ Code 2A:156A, *et.*

*Seq.* and common law fraud as set forth above;

106.    That Judgment be entered in their favor awarding Plaintiffs all their

attorney's fees and costs associated with prosecuting this action;

107.    Pre and post-judgment interest;

**108.**    That the Court grant such other equitable and legal relief that the Court

may deem just and appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury of all claims so triable.


SMITH, CROTTY, MEYER & BRUINS
Attorneys for Defendant


By: _____
William T. Smith

January 4, 2019