UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

NEW CONCEPTS FOR LIVING, INC.,
STEVEN SETTEDUCATI,
    *Plaintiffs*,
  v.

COMMUNICATIONS WORKERS LOCAL
1040, WEISSMAN & MINTZ, LLC, BRYAN
BALDICANAS, AND JOHN DOES 1-3,
    *Defendants*.

Civil No.: 19-cv-719 (KSH) (CLW)

**OPINION**

## I. Introduction

This matter is before the Court on the motion of plaintiffs New Concepts for Living, Inc. ("New Concepts") and Steven Setteducati seeking reconsideration of the Court's February 27, 2020 order granting defendants' motions to dismiss the complaint. For the reasons set forth below, the motion for reconsideration will be denied.

## II. Background

Plaintiff New Concepts operates residential group homes and a day program for developmentally disabled adults in northern New Jersey. Plaintiff Setteducati is its CEO. (D.E. 1, Compl. ¶¶ 7, 12, 14.) Non-party Levander Williams was the house manager of the company's group home in River Vale and, in that role, supervised the staff providing direct care to residents. (*Id.* ¶¶ 15-16.) Defendant Communication Workers Local 1040 ("CWA") is a labor union that represented the direct care staff employed by New Concepts. (*Id.* ¶ 17.) Defendant Bryan Baldicanas was the union's steward, or "resource person," for the River Vale facility, and is also alleged to have been employed by CWA and a member of bargaining committee. (*Id.*)

In October 2016, Baldicanas made two recordings of statements Setteducati made, the first in a phone call from Williams and the second during an in-person conversation with

1

Baldicanas and another employee, Saeed Martin. According to the complaint, these recordings were made amid an effort to decertify CWA as the exclusive bargaining agent for employees of New Concepts, and an opposing effort, involving CWA and Baldicanas, to stop that from happening. (*See* Compl. ¶¶ 18-20, 33-35.) Plaintiffs allege that CWA, Baldicanas, and CWA's counsel, defendant Weissman & Mintz, violated federal and state wiretapping laws through their alleged involvement with the recordings, and that Baldicanas also committed common law fraud based on certain actions related to the creation of one or both of the recordings.

More specifically, plaintiffs allege the following sequence of events. On October 18, 2016, Williams called Setteducati from his office at the New Concepts facility in River Vale. (*Id.* ¶ 27.) That office was adjacent to the facility's dining room and kitchen area. (*Id.* ¶ 16.) During the phone call, which involved "employee relations matters," Williams asked Setteducatti to come to the facility that evening to speak to Baldicanas. (*Id.* ¶ 27.) Williams used the speakerphone function of his office telephone to make this call, and Baldicanas "secreted himself within earshot of the conversation" and used his cell phone to record it. (*Id.* ¶¶ 27-28, 32.) Baldicanas then passed along this recording, which the parties refer to as Recording 1, to CWA and Weissman & Mintz. (*Id.* ¶¶ 29-30.) According to plaintiffs, neither Williams nor Setteducati was aware that Baldicanas was recording the call. (*Id.* ¶ 28.) Baldicanas is, however, alleged to have "encouraged Williams to arrange for Setteducati to come to River Vale that evening under false and misleading premises," specifically that Baldicanas was "unhappy" with CWA and wanted to "get the facts" from Setteducati on the decertification petition. (*Id.* ¶ 33.)

Setteducati did in fact come to the facility later that day and had a conversation with Saaed Martin and Baldicanas. (*See id.* ¶ 35.) During the conversation, Setteducati "attempted to answer questions posed by Martin, but actually instigated by Baldicanas." (*Id.*) Baldicanas also

recorded this conversation; the parties refer to it as Recording 2. (*Id.*) Plaintiffs allege that Baldicanas was acting as CWA's agent in obtaining the recordings, that Baldicanas disclosed the contents of the recordings to CWA and Weissman & Mintz, that CWA and Weissman & Mintz came into possession of the recordings themselves after their making, and that they disclosed both recordings and attempted to use one of them in the context of proceedings before the National Labor Relations Board (NLRB) relating to CWA's efforts to stop the employees' pursuit of decertification. (*Id.* ¶¶ 29, 36-39.)

Plaintiffs filed suit on January 18, 2019, asserting that defendants violated the federal wiretap act, 18 U.S.C. § 2510 *et seq.* (counts 1 and 3), and New Jersey's analogous wiretap statute, N.J.S.A. 2A:156A-2 *et seq.* (counts 2 and 4).[1] Plaintiffs also asserted a common law fraud claim against Baldicanas (count 5). All defendants moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

On February 27, 2020, the Court heard oral argument on the motions and granted the motions to dismiss. (D.E. 60 (Order); D.E. 66 (Tr.).) The Court concluded that taking the complaint allegations as true, as required at the motion to dismiss stage, Baldicanas was a "party" to the communications he recorded and no tort or crime secondary to the interception was plausibly pleaded, defeating the wiretap claims as to Baldicanas (and as to CWA and Weissman & Mintz, given that Baldicanas's alleged violation was a necessary predicate to their liability). Moreover, the fraud claim in count 5 was not plausibly pleaded, either as a standalone fraud claim or as a tort secondary to the interception. Finally, the Court held that any amendment would be futile, warranting dismissal with prejudice.

---

[1] Counts 1 and 2 were asserted by New Concepts against defendants and counts 3 and 4 were asserted by Setteducati against defendants.

Plaintiffs have now moved for reconsideration, arguing that the Court erred in its application of the relevant case law, specifically *In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125 (3d Cir. 2015), to the facts of this case, and that the Court should have dismissed the common law fraud claim without prejudice so plaintiffs could reassert it in state court. (D.E. 62-1, Moving Br.)

III. **Standard of Review**

To succeed on a motion for reconsideration under Fed. R. Civ. P. 59(e), the movant must demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).[2]

Reconsideration is considered an "extraordinary remedy" to be granted "sparingly." *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996). It is not warranted simply because a party disagrees with a decision or wants to reargue the original motion. *Fannie Mae v. Dubois*, 2019 WL 6522822, at *2 (D.N.J. Dec. 4, 2019) (Vazquez, J.) A motion for reconsideration is likewise "not an opportunity to raise matters that could have been raised before the original decision was reached." *Id.* To warrant reconsideration, the movant must "present 'something new or something overlooked by the court in rendering the earlier decision.'" *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2010) (Rodriguez, J.) (quoting *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 337 (D.N.J. 1995)).

---

[2] Plaintiffs move under both Fed. R. Civ. P. 59(e) and L. Civ. R. 7.1(i). Given the finality of the Court's order of dismissal, Rule 59(e) applies, rather than the local rule, which addresses motions to reconsider interlocutory orders. *See Navarrete v. United States*, 2013 WL 796274, at *2 (D.N.J. Mar. 4, 2013) (characterizing motion for reconsideration of final order as made under Rule 59(e)); *see also Adkins v. Sogliuzzo*, 820 Fed. Appx. 146, 149 (3d Cir. 2020) (observing that L. Civ. R. 7.1(i), by its terms, does not apply to motions made under Rule 59(e)).

4

"Overlooked" refers "only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered." *Id.*

## IV. Discussion

The motion for reconsideration makes two discrete arguments: that the Court erred in applying the principles of *Google* to conclude that Baldicanas was a "party" within the meaning of § 2511(2)(d), and that the common law fraud claim should have been dismissed without prejudice and remanded to state court. Neither warrants the relief of reconsideration.

### A. Wiretap claims

With respect to the dismissal of the statutory claims, the legal framework governing those claims was addressed at oral argument and no party disputes it; plaintiffs' disagreement is with the Court's application of the framework to the pleaded facts. Briefly, the federal wiretap act[3] provides for a civil cause of action to a person whose wire or oral communications are intercepted, disclosed, or intentionally used in violation of the statute. 18 U.S.C. § 2520(a). A successful claim may result in, *inter alia*, an award of damages and attorneys' fees. *Id.* § 2520(b). Additionally, an intercepted communication may not be used as evidence in any proceeding if disclosure of it would violate the act. *Id.* § 2515.

A plaintiff pleads a *prima facie* case under the act by showing that the defendant "'(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device.'" *Google*, 806 F.3d at 135 (citations omitted). Even if these elements are met, there is no violation

---

[3] The provisions of New Jersey's wiretap statute are materially identical to the relevant sections of the federal act; as such, the parties agreed, and plaintiffs have reiterated in their motion for reconsideration, that the state wiretap claims do not warrant a separate analysis. (Tr. 62:18-25; Moving Br. 1.) Accordingly, plaintiffs' claims under the New Jersey statute (counts 2 and 4) rise or fall with the federal claims (counts 1 and 3).

if one of various exceptions applies. The exception relevant here, and which all parties agree is dispositive of the wiretapping claims if it applies, provides that a violation is not established if the person who intercepts the communication is a party to it, or a party to the communication has given prior consent to the interception, unless – in an exception to the exception – the interception is done to commit a criminal or tortious act:

> It shall not be unlawful under this chapter [18 U.S.C. § 2510 *et seq.*] for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d); *see also Google*, 806 F.3d at 135.

In *Google*, the Third Circuit concluded that an "intended recipient" of a communication was a "party" to it. 806 F.3d at 142-43. Because the plaintiffs there, through their internet browsers in the course of requesting content from a given webpage, had sent requests for advertising content directly to the defendants – albeit without knowing that they were doing so, due to alleged deceptive behavior by the defendants – the defendants were held to be "parties" to the communication under § 2511(2)(d). *Id.* at 140-43. *See also id.* at 141 (complaint alleged "direct transmissions between the plaintiffs and the defendants"); *id.* at 142 ("[O]ur understanding of the plaintiffs' allegations is that the defendants acquired the plaintiffs' internet history information when, in the course of requesting webpage advertising content at the direction of the visited website, the plaintiffs' browsers sent that information directly to the defendants' servers.").

That the defendants "procured their entrance to [the] conversation through a fraud in the inducement" by deceiving the plaintiffs' browsers into thinking they were requesting content from a different source did not vitiate the defendants' status as parties. *Id.* at 143-44 ("Though we are no doubt troubled by the various deceits alleged in the complaint, we do not agree that a deceit upon the sender affects the presumptive non-liability of parties under § 2511(2)(d)."). In fact, the court concluded, the choice not to include an equitable exception to § 2511(2)(d) for deceptive behavior was "no accident," given that the provision's legislative history cited existing case law holding that impersonating the intended recipient of a telephone call did not contravene the wiretap act. *Id.*

As parties to the communications, the defendants therefore did "nothing unlawful under the Wiretap Act," *id.* at 142-43, unless the interception was done for the purpose of committing a criminal or tortious act – *i.e.*, unless the exception to the exception in § 2511(2)(d) applied. The wiretapping itself could not supply the qualifying tortious conduct; instead, "all authority . . . indicate[d] that the criminal or tortious acts contemplated by § 2511(2)(d) are acts *secondary* to the acquisition of the communication involving tortious or criminal use of the interception's fruits." *Id.* at 145 (emphasis added). Therefore, in order to survive a motion to dismiss, "'a plaintiff must plead sufficient facts to support an inference that the offender intercepted the communication for the purpose of a tortious or criminal act that is *independent* of the intentional act of recording.'" *Id.* (quoting *Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010)); *see also id.* at 145 n.81 ("Under section 2511, the focus is not upon whether the interception itself violated another law; it is upon whether the *purpose* for the interception—its intended use

7

was criminal or tortious. . . . Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere." (quoting *Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202-03 (9th Cir. 1999)). Because the plaintiffs in *Google* had not pled any secondary tortious or criminal use of the information acquired, and instead argued that the interception itself constituted a tort under California law, the party exception in § 2511(2)(d) remained applicable and defendants were not liable under the wiretap act. *Id.* at 145. As such, the panel held that the district court properly dismissed the plaintiffs' wiretap claim.

Applying these principles to the facts alleged in the complaint, this Court concluded that Baldicanas was an intended recipient of Setteducati's communications to Williams in Recording 1 and therefore a party to them.[4] Like the plaintiffs in *Google*, Setteducati's statements, made over the speakerphone in Williams' office, went directly to Baldicanas, who, according to the complaint, had encouraged Williams to have the conversation prompting Setteducati to make his visit to the River Vale facility later that day. That Setteducati (like the *Google* plaintiffs) was unaware that he was sending information to Baldicanas because the latter procured his entrance to the conversation by allegedly deceptive or fraudulent means (like the defendants in *Google*) did not make Baldicanas any less of an "intended recipient." Thus, the statutory exception in § 2511(2)(d) applied, and because plaintiffs alleged that the fraud Baldicanas purportedly

---

[4] Although the complaint was unclear as to whether plaintiffs sought to base their wiretapping claims on Recording 2 (in addition to Recording 1), the Court concluded in its dismissal ruling that as Baldicanas was alleged to be sitting in the room as part of the conversation with Setteducati and Martin, there could be no argument that he was not a party to the communication captured on Recording 2. (Tr. 73:16-18; Compl. ¶ 35.) Indeed, plaintiffs conceded that they were not taking the position that Baldicanas was not a party to the conversation in Recording 2. (Tr. 50:1-6.)

engaged in was to procure the recordings themselves, it was insufficiently secondary to warrant application of the "exception to the exception."

To the extent the complaint made a passing reference to potential violations of the Health Insurance Portability and Accountability Act (HIPAA) in an apparent effort to invoke the exception to the exception, the Court concluded that in the absence of any actual factual assertions in that respect, the mere possibility that plaintiffs might develop a claim under that statute was insufficient to salvage the wiretapping claims. (Tr. 68:21-75:7.)

In seeking reconsideration, plaintiffs take issue with this straightforward application of *Google* by arguing that Baldicanas was not a party to the communication in Recording 1 because the facts in *Google* are distinguishable. Citing a 2017 amicus brief submitted in *Carpenter v. United States*, 138 S. Ct. 2206 (2018), a case concerning the application of Fourth Amendment principles to cell-site location information collected by wireless carriers, plaintiffs appear to argue that because *Google* dealt with communications made in the internet context, its concept of what is a "party" does should not apply to the non-internet communication captured on Recording 1. The Court disagrees.

First, the amicus brief says nothing about the legal issue before this Court on the motions to dismiss: when, as a matter of law, an entity or person is a "party" to a communication for purposes of the federal wiretap act, and specifically under 18 U.S.C. § 2511(2)(d).

Second, to the extent plaintiffs use the amicus brief to imply that, unlike in the context of a telephone conversation, internet communications inevitably involve sending

information to recipients of which the sender is unaware (see Moving Br. 5-6), *Google* – the controlling precedent in this circuit on the specific issue that confronted this Court – did not rely on any such inevitability. Instead, the panel closely examined how the information at issue was alleged to have been acquired, how the transmissions occurred, and between what entities the transmissions were made. *See* 806 F.3d at 140-42. Only after conducting that assessment did the panel conclude there were direct transmissions made between the plaintiffs and defendants in the context of plaintiffs requesting website content, and that the defendants were "intended recipients" of the communications. In other words, the Third Circuit did not rely on the *sui generis* nature of internet communications or any inevitability of data transmissions to conclude that the plaintiffs had not adequately pleaded a violation of the federal wiretap act. Instead, it applied a test and definitions that readily apply to other types of communications, including the medium here: a telephone conversation conducted via speakerphone.

Plaintiffs also suggest that a "better" case than *Google* for the Court to have relied on is *White v. Samsung*, 2019 WL 8886485 (D.N.J. Aug. 21, 2019) (Arleo, J.), an unpublished district court decision involving defendants who allegedly embedded software in the televisions they manufactured to surreptitiously intercept transmissions from content providers (such as cable providers and streaming services) to the plaintiffs' televisions. The court concluded that the manufacturers were not "parties" to the transmissions from the content providers to the televisions, distinguishing *Google* because it involved direct receipt by those defendants of the relevant communications. *White* does not bind this Court, and the facts are readily distinguishable. There, the defendants allegedly captured transmissions that were not being directly sent to them,

10

using software to accomplish it.  Here, communications went directly from the sender (Setteducati) to both Williams (the intended recipient Setteducati knew about) and Baldicanas (the recipient Setteducati did not contemporaneously know about but who, according to the factual allegations gleaned from the complaint, arranged for the call to happen, was the intended recipient of what was said, and directly received the contents of the call by virtue of Williams holding the call by speakerphone within earshot of Baldicanas.)

Plaintiffs may disagree that the legal principles articulated in *Google* should apply to the decidedly lower-tech scenario they claim is actionable here under the wiretap laws. But, as noted earlier, *Google* did not confine its holding to the facts or types of communications before it, and the precepts it set forth control the outcome here. Reconsideration is not the appropriate vehicle for plaintiffs to express their disagreement with the Court's interpretation of case law that is binding upon it, and plaintiffs' request that the Court reconsider the dismissal of their statutory claims is denied.  *See Leja v. Schmidt Mfg.*, 2008 WL 1995140, at *3 (D.N.J. May 6, 2008) (Debevoise, J.) ("A motion for reconsideration may not be used to 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" (quoting *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland*, 744 F. Supp. 1311, 1314 (D.N.J. 1990)).  *See also Cafaro v. HMC Int'l, LLC*, 2009 WL 2382247, at *2 (D.N.J. July 30, 2009) (Linares, J.) ("Disagreement with the Court's interpretation is a matter for appeal, not reconsideration.").

**B. Fraud claim**

Plaintiffs also argue that the Court should have dismissed the common law fraud claim without prejudice by declining to exercise supplemental jurisdiction over it. This argument relies on the erroneous premise that the only basis for the Court's dismissal of the fraud claim was that it was insufficiently secondary from the alleged interception to warrant application of the "exception to the exception" in 18 U.S.C. § 2511(2)(d). (*See* Moving Br. 9.)  That is incorrect: although the Court recognized that the apparent purpose of including the fraud claim was to support the statutory claims, and, specifically, serve as the secondary conduct necessary to salvage the wiretap claims under § 2511(2)(d), the Court also concluded that no standalone fraud claim had been adequately pleaded.  To the extent the fraud claim relied on a vaguely asserted allegation that Baldicanas's actions amounted to a violation of HIPAA, the Court pressed counsel for an explanation of how those allegations supported or even related to a claim of fraud. (Tr. 52:5-54:20.)  Counsel conceded that he did not have a factual basis to plead a HIPAA claim, and instead wanted to use discovery to explore the possibility of one; counsel also conceded that it was "not a fundamental part of the fraud claim."  (Tr. 53:14-15, 54:16-20.)  Because a claim cannot survive dismissal based on "what might be developed as a claim" (Tr. 74:20-25), the Court concluded that count five was "an implausibly pled standalone claim insofar as it deals with HIPAA."  (*Id.* at 75:3-2.)  *See also, e.g.*, *White v. Hon Co.*, 520 F. App'x 93, 95 (3d Cir. 2013) (discovery is not to be used as a fishing expedition to seek facts necessary to establish legally adequate complaint).

Moreover, it was not "a clearly articulated fraud in and of itself."  (Tr. 75:24-76:1.)  The first element of a fraud claim is a "material misrepresentation of a presently

12

existing or past *fact*." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 172-73 (2005) (emphasis added). Opinion, puffery, and other statements of other than presently existing or past facts are not actionable. *Suarez v. Eastern Int'l Coll.*, 428 N.J. Super. 10, 29 (App. Div. 2012). The "misrepresentation" plaintiffs relied upon for their fraud claim – that Baldicanas was "open minded" and wanted to "get the facts" – did not meet this element of the claim. (*See* Tr. 76:2-7.)

Plaintiffs fail to address these substantive rulings, and instead contend that the Court should have declined jurisdiction over the fraud claim, with the effect of permitting plaintiffs to file a new action in state court asserting that claim. Although the dismissal of the federal wiretap claims permitted (but did not require) the Court to decline to exercise supplemental jurisdiction over the state law claims, *see* 28 U.S.C. § 1367(c)(3), the interrelated nature of the federal wiretap claims, state law wiretap claims, and state law fraud claim warranted the Court's retention of that supplemental jurisdiction here to determine that those claims were likewise not adequately pleaded. Indeed, the statute conferring supplemental jurisdiction contemplates the very scenario before the Court here. 28 U.S.C. § 1367(a) (when the court has original jurisdiction over a civil action, it also has supplemental jurisdiction over "all . . . claims that are *so related* to claims in the action within such original jurisdiction that they form part of the *same case or controversy* under Article III of the United States Constitution (emphasis added)).

## V. Conclusion

Plaintiffs' motion for reconsideration is denied. An appropriate order will issue.

Date: May 28, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

13